IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| *In re* SUBPOENA OF DANIEL DRASIN | |
| ADVANCED CAREER TECHNOLOGIES, INC., | Civil Action No. ELH-13-1140 |
| *Plaintiff*, | (Related Case: *Case No. 13-cv-00304 in the United States District Court for the District of Colorado*) |
| v. | |
| JOHN DOES 1-10, all whose true names are unknown, | |
| *Defendants*. | |

## MEMORANDUM

In this case, I must determine whether to quash a subpoena issued by Advanced Career Technologies, Inc. ("ACT") to a non-party, Daniel Drasin.

ACT is the plaintiff in a case pending in federal court in Colorado (the "Colorado Action"). There, ACT sued ten John Doe defendants based on allegedly defamatory comments posted anonymously on "Random Convergence," an internet blog administered by Daniel Drasin, located at http://randomconvergence.blogspot.com/ (the "Blog").[1] In particular, ACT lodged claims for "trade libel/commercial disparagement"; violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105. *See* Verified Complaint ("Complaint," ECF 1-1). Drasin is not a party in the Colorado Action.

---

[1] The Random Convergence blog is hosted by the blog service Blogspot, which is owned by Google, Inc. ("Google"). ECF 6 at 2.

On December 10, 2013, Magistrate Judge Kristin Mix of the United States District Court for the District of Colorado granted ACT's motion for leave to serve a third party subpoena on Drasin, a resident of Maryland.  On December 28, 2013, ACT served the subpoena (the "Subpoena," ECF 12-12) on Drasin.  The Subpoena, which was the third subpoena served on Drasin by this Court in connection with the Colorado Action, commanded Drasin to produce "[a]ny hard drives, servers, and any other devices used by YOU to administer the Random Convergence Blog and data stored online via website or application . . . ."  *Id.*[2]

On January 10, 2014, Drasin filed in this Court a third-party motion to quash the Subpoena, pursuant to Fed. R. Civ. P. 45(c)(3) ("Motion," ECF 12), asserting that it is unreasonable, imposes an undue burden on him, and is not likely to lead to relevant evidence. ACT opposes the Motion ("Opposition," or "Opp.," ECF 13), and has submitted several exhibits. It argues that the Subpoena complies with Fed. R. Civ. P. 45 and that principles of comity weigh in favor of deferring to the order of Magistrate Judge Mix.  Drasin filed a reply ("Reply," ECF 14).

The issues have been fully briefed, and no hearing is necessary to resolve them.  *See* Local Rule 105.6.  For the reasons that follow, I will deny the Motion.

### Factual Background

ACT is a "career guidance service firm that assists job seekers throughout their job search."  *See* Compl. ¶ 7.  It "assist[s] clients in developing a marketing plan that acts as a road map for the clients' job search, identifying the client's strengths and skills while providing solutions for any weaknesses, and locating industry options and opportunities in an effort to maximize the client's chances of securing gainful employment."  *Id.*

---

[2] Drasin previously filed a motion to quash the first two subpoenas.  I denied the motion in a Memorandum and Order (ECF 8, 9) filed on July 24, 2013.

As noted, Drasin is the administrator of a blog known as Random Convergence. *See* Affidavit of Robert J. Gerberg, Jr., President & Chief Executive Officer of ACT, ¶ 9 ("Gerberg Aff.," ECF 6-4). According to ACT, Drasin exercises editorial control over the blog. *Id.* Since approximately 2007, individuals have posted over 350 anonymous comments on Random Convergence, many of which disparage ACT's services. *See id.* ¶¶ 11, 17; Opp. Exh. C at 16 (ECF 6-3) (screen prints of posts and comments about ACT on Random Convergence).

ACT claims the anonymous postings are "a sophisticated and coordinated campaign" intended to "damage ACT's business and reputation." Opp. at 4. In its view, "[t]he entries on Random Convergence are designed to maximize the effect of the blog by sending spam and driving up the blog's rankings and visibility in the search engine Google." Gerberg Aff. ¶ 15. ACT reports that it has "received numerous emails from potential or current clients stating that because of the blog, they will no longer be using ACT services." *Id.* ¶ 27. Additionally, ACT claims that it has "asked to post comments on the Random Convergence Blog to rebut some of the false statements, but Mr. Drasin refused these requests." *Id.* ¶ 32.

On March 11, 2013, Magistrate Judge Mix authorized expedited discovery and granted ACT's motion for leave to serve third party subpoenas on Drasin. As noted, two subpoenas were previously issued to Drasin by this Court. They commanded him, in his individual capacity and as administrator of the Random Convergence blog, to produce the "true name, address, telephone number, e-mail address, and Media Access Control address of each of the ten Doe Defendants," based on "the IP [Internet Protocol] addresses from which they posted and edited posts about [ACT] and its employees." ECF 1-3. ACT was also granted leave to serve a subpoena on Google, ECF 6 at 14, but the record does not reflect whether ACT ever served that subpoena on Google. On April 18, 2013, Drasin, then self-represented, filed a third-party motion to quash the

subpoenas, ECF 1, asserting, *inter alia*, that they infringed on the Doe defendants' First Amendment right to anonymous speech. In a Memorandum and Order of July 24, 2013, this Court denied the motion to quash. *See* ECF 8, 9.

On August 15, 2013, Drasin, through counsel, wrote an email to counsel for ACT. ECF 12-6. In the email, Drasin outlined the different ways in which a visitor to the Blog may post a comment, *id.*:

> When someone wishes to post a comment on Random Convergence, he or she fills out a form on the blogger website and then posts his or her comments. The poster can optionally sign the post with a Google-account-name, an email address, an OpenId, a free-form name or URL, or simply "Anonymous." If any of the non-anonymous options are used, the comment will appear on the blog with the comment beginning as follows: "<moniker> says …" followed by the comment. If the poster chooses to use a Google-account-name, the moniker will be underlined and selectable in the viewing webpage. Selecting the moniker takes one to the public information that the poster/Google user has chosen to make available. If the poster chooses another moniker, the moniker may simply be text and read "un-selectable." If the poster chooses to post as Anonymous, then the comment will begin with "Anonymous says …" followed by the body of the post. The word Anonymous will not be selectable and there will be no other information available.

Drasin further advised that most individuals who posted comments on the Blog did so anonymously, and he explained that he had no records of those who chose to remain anonymous. *Id.* Drasin did, however, provide the information he possessed about the commenters who had not posted anonymously, all of which appears to be information that would be available to anyone who visits the Blog. *Id.* The letter concluded, *id.*: "In short, we have provided you with all the relevant information that Mr. Drasin has with respect to your discovery requests, and I assume that this matter is now closed with respect to him."

ACT responded by letter on August 30, 2013. ECF 12-7. It summarized its concerns about Drasin and his blog and asked that Drasin "voluntarily agree to identify and turn over any hard drives, servers, and any other devices that he used to administer the Random Convergence

blog for imaging and investigation by a computer forensics professional . . . ." *Id.* The letter also expressed ACT's belief that Drasin has the information ACT requested because Drasin "utilized a program known as 'Sitemeter' which, among other things, tracks and records the IP address of every person and computer which posted or commented on the Random Convergence blog." *Id.*

Drasin's attorney responded on September 6, 2013. ECF 12-8. He maintained that Drasin "does not want to do battle with [ACT], but he cannot give [ACT] what he does not have." *Id.* He also confirmed that Drasin has an account with Site Meter, and he advised ACT that Drasin "is amenable to providing [ACT] with an authorization so that [ACT] can access [Site Meter's] records." *Id.* He concluded: "Mr. Drasin denies that he has done anything improper. If you have facts to the contrary, please provide them. Otherwise, I assume that this exercise is a fishing expedition and would remind you of your obligations to the Court." *Id.*

Thereafter, the parties engaged in negotiations and, on October 30, 2013, Drasin forwarded to ACT's counsel a signed copy of an authorization permitting ACT access to the records associated with his Site Meter account. ECF 12-9. The next day, October 31, 2013, ACT filed in the District of Colorado a "Status Report and Motion to Enlarge Scope of Discovery Order and Subpoena" ("Status Report," ECF 13-8). In the Status Report, ACT claimed that Drasin "has yet to produce any information in response to the subpoena and in compliance with Judge Hollander's order," and further advised that Drasin claimed not to have any information regarding the identities of the posters on the blog. ACT asserted that "it is appropriate to require some independent factual confirmation that Mr. Drasin does not, in fact, have the information sought by ACT's subpoena," and it asked the court to enlarge the scope of

the original subpoena, to "allow ACT to proceed with its investigation into the identities of the anonymous blog posters and commenters . . . ." *Id.*

On November 7, 2013, Drasin's counsel contacted ACT by email noting Drasin's willingness to "consider allowing a mutually agreed upon computer forensic examiner to inspect his personal computer if in fact the scope will be as limited as you suggest. To do this . . . [h]e further needs a written guarantee that . . . [ACT] will stop its harassment and not seek any further discovery from him." ECF 12-10. According to Drasin, ACT never responded to the email.

On December 10, 2013, Judge Mix found good cause for ACT to serve an additional, pre-Rule 26(f) conference, third-party subpoena for the "limited purpose of ascertaining the ten Doe Defendants' personally identifiable information." ECF 13-12. Judge Mix also ordered, *id.* (emphasis in original):

> The subpoena shall be limited to the production of any hard drives, servers, and any other devices used by Mr. Drasin to administer the Random Convergence Blog and data stored online via website or application. Plaintiff may make a forensic copy of the data on each device and may conduct an appropriate forensic examination of the data to ascertain the information sought by Plaintiffs original subpoena. Plaintiff shall return any hard drive, server, or other device produced by Mr. Drasin **within thirty (30) days** of production of said devices.

ACT served Drasin with the Subpoena on December 28, 2013. As noted, it commands Drasin to produce "[a]ny hard drives, servers, and any other devices used by YOU to administer the Random Convergence Blog and data stored online via website or application . . . ." ECF 12-12.

Also on December 28, 2013, Drasin's counsel contacted ACT by email and inquired whether ACT had subpoenaed Site Meter. ECF 12-13. ACT responded that it had issued a subpoena to Site Meter, but that it would not "give up on seeking the forensic examination." ECF 12-14. On January 21, 2014, Site Meter filed numerous objections to the third-party

subpoena it had been issued and then advised ACT that it had "no responsive documents in its possession, custody, or control."  ECF 13-13.

## Discussion

Drasin's primary contention is that ACT's subpoena subjects him to an undue burden. Fed. R. Civ. P. 45(c)(3), titled "Quashing or Modifying a Subpoena," states, in pertinent part: "On timely motion, the issuing court must quash or modify a subpoena that . . . (iv) subjects a person to undue burden."  In *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 439 (D. Md. 2012), Chief Judge Chasanow explained, *id.*:

> "Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45(c)(3)(A)(iv) usually raises a question of the reasonableness of the subpoena," an analysis that requires "weighing a subpoena's benefits and burdens" and "consider[ing] whether the information is necessary and whether it is available from any other source."  9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2008).  This inquiry is "highly case specific" and involves "an exercise of judicial discretion."  *Id.*  "The burden of proving that a subpoena is oppressive is on the party moving to quash." *Fleet Bus. Credit, LLC v. Solarcom, LLC*, No. Civ. AMD 05–901, 2005 WL 1025799, at *1 (D. Md. May 2, 2005) (internal quotation marks omitted).

For the reasons that follow, I conclude that Drasin has shown that the subpoena subjects him to an undue burden.  Therefore, I will quash the subpoena.

### A.  Rule 45(c)(3)(A)(iv) Analysis

#### *1.  Burdens of Subpoena*

The Subpoena imposes two types of burden on Drasin.  First, in order to comply with the subpoena, Drasin must surrender his personal hard drives to ACT for up to thirty days.  Personal computers generally cannot function without their hard drives, so this requirement would force Drasin to spend up to thirty days without the use of his personal computer.  *See* Motion at 8.  In today's technology-dependent world, this burden is significant.   Second, forcing Drasin to surrender his hard drives to ACT would give ACT access to Drasin's personal files.  *Id.*  As the

Ninth Circuit has observed, *United States v. Arnold*, 454 F. Supp. 2d 999, 1003–04 (C.D. Cal. 2006) (subsequent history omitted):

> A laptop and its storage devices have the potential to contain vast amounts of information. People keep all types of personal information on computers, including diaries, personal letters, medical information, photos and financial records. Attorneys' computers may contain confidential client information. Reporters' computers may contain information about confidential sources or story leads. Inventors' and corporate executives' computers may contain trade secrets.

Requiring Drasin to grant ACT access to this personal information certainly constitutes a burden. To be sure, Magistrate Judge Mix's order prohibits ACT from using Drasin's personal information for any reason other than to protect its own rights in the Colorado Action, but even a limited invasion of one's privacy is still an invasion.

These burdens are particularly troubling considering that Drasin has not been accused of any illegality, nor is he a defendant in the Colorado Action. Rather, he is merely the administrator of a blog on which other individuals posted allegedly defamatory comments. Moreover, as discussed, *infra*, ACT has alternative means to obtain the information it seeks, such as serving a subpoena on Google.

### 2. Benefits of Subpoena

The benefits of the Subpoena appear to be minimal, as there is no indication in the record that Drasin possesses any information that would be relevant in the Colorado Action beyond that which he has already provided. As noted, ACT previously served two subpoenas on Drasin. Those subpoenas commanded Drasin to produce identifying information about each of the ten Doe Defendants, based on "the IP [Internet Protocol] addresses from which they posted and edited posts about [ACT] and its employees." ECF 1-3. Drasin responded to the subpoenas by sending an email to ACT and explaining: "With respect to the 21 comments you asked Mr. Drasin to investigate, for 16 of them, Dan Drasin does not have any information other than what

the individual posted as his or her comments with the name 'anonymous.'" ECF 12-6.  As to the other 5 comments, Drasin attached to the email the "limited information he could obtain related to the anonymous posters on his blog."  Memo at 4; *see* ECF 12-6.  That information primarily consisted of individuals' names and their user accounts on Google.  ECF 12-6.

Although ACT suggests that Drasin's response was noncompliant with the subpoenas, it has not provided any evidence, beyond its own unsupported conjecture, that Drasin's response was untruthful, incomplete, or inadequate.  Nor does it suggest that Drasin was mistaken in his description of the process by which commenters may post anonymously on the Blog.  In fact, ACT's primary argument in support of its claim that Drasin has the IP addresses it seeks has been that Drasin subscribes to a service called Site Meter, which allegedly tracks the IP addresses of visitors to the Blog.  However, this theory has been revealed as entirely unfounded.  Notably, Drasin authorized ACT to access all Site Meter records related to the Blog.  ECF 12-9.  ACT then issued a subpoena to Site Meter requesting all data stored online via website or application used by Mr. Drasin to administer the Random Convergence Blog . . . ."  ECF 13-13.  Site Meter responded that it possessed no responsive documents.  *Id.*  Thus, ACT's primary "support" for its claim that Drasin was withholding information has been exposed as meritless.

ACT also suggests that Drasin must be withholding relevant information because "if Mr. Drasin really possessed as little information as he claimed, why did he spend so much time and money fighting the subpoena in the first place?"  Status Report at 2.  However, just as juries are instructed not to draw negative inferences from evidentiary objections, the Court will not infer mendacity from Drasin's decision to exercise his legal right under Fed. R. Civ. P. 45 to object to the subpoenas.

In sum, it appears from the record that very little benefit, if any, will result from the Subpoena.  ACT has not proffered any credible reason for the Court to disbelieve Drasin's contention that he does not have the information sought by ACT.

### 3. Availability from Other Source

ACT was unable to obtain the requested information from Site Meter.  But, the information it seeks is available from at least one other source: Google.  Indeed, ACT's motivation for subpoenaing hard drives and servers owned by Drasin is curious because, as ACT acknowledges, ECF 6 at 3, the Random Convergence blog is hosted by Google, and not on a hard drive or server owned by Drasin.[3]

The District Court of Colorado has already granted leave for ACT to serve a subpoena on Google, but the record does not reflect whether ACT has served that subpoena on Google.  If ACT has chosen not to serve the subpoena on Google, it has failed to explain adequately its reasons for declining to do so.[4]  Alternatively, if ACT did serve the subpoena on Google and Google was unable to provide ACT with the information it seeks, then it would be even less likely that Drasin possess that information.

---

[3] Generally speaking, a blog created using Google's "Blogspot" service is hosted on Google's servers.  In somewhat oversimplified terms, this means that the data associated with the blog is located on a server or other device owned by Google, rather than on the hard drive of the blog's creator.  This allows the creator of the blog or visitors to the blog to access the information on the blog from any physical location.

[4] On a similar note, ACT's claim that "it is infinitely less expensive and costly to perform forensic analysis on Mr. Drasin's hard drives and devices used to administer the Blog than it is for Google or Site Meter to sift through billions and billions of bits of data, accumulated over several years' time," Opp. at 10, is disingenuous at best.  In all likelihood, Google and Site Meter have developed efficient methods for indexing and searching their archived data.  *See generally Google Transparency Report*, available at http://www.google.com/transparencyreport/userdatarequests/ (explaining that Google "regularly receives requests from governments and courts around the world to hand over user data.").  In any event, ACT's assertion is based on conjecture.

In sum, the information ACT seeks—if it exists—appears to be readily available from a source other than Drasin.

## B. Comity

Finally, ACT's argument that "principles of comity weigh in favor of the Court deferring to [Magistrate Judge Mix]" is unpersuasive. Drasin is not a party to the action in Colorado, and it does not appear that he had an opportunity to oppose the Subpoena in that court or to otherwise persuade Magistrate Judge Mix of its impropriety. *See* Reply at 8. Moreover, Magistrate Judge Mix was not required to, and did not, conduct an analysis under Rule 45. Rather, because ACT asked to conduct discovery prior to a Rule 26(f) conference, Magistrate Judge Mix's analysis was limited to Fed. R. Civ. P. 26(d), which governs such requests. Thus, Magistrate Judge Mix has not issued an order on the relevant question to which I could defer.

In addition, Fed. R. Civ. P. 45(d) explicitly provides that it is the responsibility of the "the court for the district where compliance is required" to evaluate whether the subpoena complies with Rule 45. That review would be entirely toothless if the reviewing judge is required to defer to the judge who granted leave to serve the subpoena.

## Conclusion

On this record, I am convinced that the Subpoena would impose an undue burden on Drasin. It would require Drasin to forego the use of his personal computer for up to a month and to disclose his personal information to ACT. Further, nothing in the record suggests that ACT would obtain information relevant to the Colorado Action from Drasin's hard drives. Finally, ACT has another avenue available to it that it has apparently chosen not to pursue.

Perhaps the Subpoena would be acceptable if ACT exhausts its less intrusive options and/or provides the Court with evidence supporting its contention that Drasin's hard drive is

likely to contain identifying information about anonymous commenters on a blog hosted by Google.  Until such time, however, I am convinced that the Subpoena imposes an undue burden on Drasin and therefore it must be quashed.

For the foregoing reasons, I will grant Drasin's motion to quash the subpoena.  An Order follows.


Date: February 12, 2014

                         /s/
_____
Ellen L. Hollander
United States District Judge